**BONDS v. SHERBURNE MERCANTILE CO. et al.**

**No. 11785.**

Circuit Court of Appeals
Ninth Circuit.

July 15, 1948.

Rehearing Denied Sept. 20, 1948.

434

S. J. Rigney, of Cut Bank, Mont., for appellant.

Art Jardine, S. B. Chase, Jr., and John D. Stephenson, all of Great Falls, Mont., for appellees.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment denying to appellant, a half white Indian woman, a member of the Blackfeet Tribe, the quieting in her of title to certain lands in Montana, claimed by her under a trust patent based upon an allotment to her.

The complaint in this case was filed on February 16, 1942, in the United States District Court for the District of Montana, Great Falls Division. As stated in appellant's brief, it alleges, in substance, that the plaintiff (appellant here) is an Indian person, at all times a ward of the United States, under charge of the Superintendent of the Blackfeet Indian Reservation in the State and District of Montana; that she was allotted 320 acres of land on the Blackfeet Reservation on February 28, 1918, and a trust patent issued to her containing the 25-year period of restriction on alienation and the promise of the United States to issue a patent in fee at the termination of the trust period as set out and provided in Section 348 of Title 25 U.S.C.A.; a description of the land so allotted; that on or about the 12th day of December, 1918, the United States, without any application therefor or consent thereto, issued a patent in fee, the same being filed for record on February 20, 1920; the said fee patent was issued against the will and without the consent of the appellant and contrary to law and the express promise of the United States to hold the land in trust for the appellant and her heirs. That the appellees claim some right, title or interest in and have possession of the lands by reason of an alleged sheriff's deed and payment of taxes for a period of over ten years; the appellant alleges fraud by appellees in the procuring of the alleged sheriff's deed and in all of the proceedings leading to the procuring of the alleged sheriff's deed; that the claim or claims of appellees are void, wrongful and unlawful from the beginning; that appellant sought to have the fee patent cancelled through the Office of the Superintendent of the Blackfeet Indian Reservation and the office of the Secretary of the Interior but that the Superintendent of the Blackfeet Reservation and the Office of the Secretary of the Interior have failed and neglected to give appellant the relief demanded by her; that the fee patent so issued to appellant was void and the claim of title by the appellees is based upon the fee patent and likewise void and of no legal effect for any purpose. The appellant claims and alleges that the alleged mortgage of the appellee, Sherburne Mercantile Company was procured by fraud and that appellant never signed and executed the said mortgage, was never indebted to the said Sherburne Mercantile Company; that she never executed any note for any obligation to the Sherburne Mercantile Company and that Sherburne Mercantile Company in foreclosing the alleged mortgage never caused any process to be served upon appellant; that the testimony of the appellant denying execution of the note-mortgage and alleged service of process was not rebutted or denied as shown by the record in the proceeding of the appellees purporting to quiet their title to the land. That the appellant was never found or adjudged competent to receive a fee patent and she never consented to the assessment of the land for taxation and never paid any taxes on the land. That the fee patent to the allotment was issued under a policy of the Department of the Interior initiated at or about the year 1918 under which fee patents were forced on the Blackfeet Indians and others, and the departmental letter of April 24, 1918, from J. H. Dortch, Acting Chief Clerk, to F. C. Campbell, Special Superintendent in charge, Blackfeet School, is proof of such forcing.

Issue was joined on these contentions and appellees pleaded as res judicata of all of them a judgment of the district court of the ninth district of the State of Montana. That is a suit to quiet title brought

by the appellee company, in which the title it quieted in that company.

The district court below held that the decision of the Montana state court was res judicata and binding on it and gave and entered judgment dismissing appellant's complaint on its merits. This appeal followed.

■ We think the district court of the State of Montana had jurisdiction in personam over appellant to determine her title, if any, to the land in question. The Company's complaint alleged ownership and that appellant asserted an adverse claim. Appellant answered and also cross-complained, seeking jurisdiction of the state court for the quieting in her of title to the disputed land.

■ If appellant had issued to her a valid patent in fee, she was entitled to sue and could be sued in the state court and properly invoke the jurisdiction of the state court in her cross complaint. 25 U.S. C.A. § 349 provides:

"Patents in fee to allottees. At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 348, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; and no Territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law: Provided, That the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs-at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent: Provided further, That until the issuance of fee-simple patents all allottees to whom trust patents shall be issued shall be subject to the exclusive jurisdiction of the United States: And provided further, That the provisions of sections 331 to 334, inclusive, 336, 341, 348 to 350, inclusive, and

381 shall not extend to any Indians in the former Indian Territory. (Feb. 8, 1887, c. 119, § 6, 24 Stat. 390; May 8, 1906, c. 2348, 34 Stat. 182.)"

■ Considering the provision of that statute that the exclusive jurisdiction of the United States ceases upon the issuance of a fee patent, in connection with its remaining provisions, we construe this section in favor of the Indian (United States v. Nez Perce Co. Idaho, 9 Cir., 95 F.2d 232, 236), and hold that it confers on an Indian receiving a valid fee patent before the expiration of the 25-year patent, the right to sue in the state courts to establish her title against the claim of the appellee. Cf. Larkin v. Paugh, 276 U.S. 431, 439, 48 S.Ct. 366, 72 L.Ed. 640.

■ Appellant alleged in her state court cross complaint that a trust patent had been issued to her in 1918, the allegation being that "the United States, through the office of the Commissioner of Indian Affairs and the Department of the Interior, issued a patent in fee to the said described lands to the defendant without her application therefor and against her will and without her consent or knowledge." Having admitted the issuance to her of the fee patent by these officers' action, it is presumed that they performed their official duties and that the Secretary of the Interior had found to his satisfaction that she was then "competent and capable of managing * * * her affairs." Minter v. Crommelin, 18 Howard 87, 89, 15 L.Ed. 279. This presumption could have been overcome by a showing that she had neither applied for nor accepted the fee patent.

■ The full record of the Montana state court proceeding, including the bill of exceptions, was made as part of the supplemental answer in the federal district court below. Appellant admitted its correctness but contended that it was not relevant because its judgment is not res judicata. On the motion for summary judgment she relied, and relies here, on her testimony shown in the bill of exceptions. We agree with appellant that on the motion for summary judgment the court below was entitled to consider it.

■ The bill of exceptions shows that the fee patent dated December 12, 1918, was issued to her at her written request, dated September 16, 1919, and the deed recorded in the County Recorder's office February 20, 1920. Having so sought the fee patent, it is a matter of indifference whether she or the United States filed the requested patent for record. United States v. Schurz, 102 U.S. 378, 26 L.Ed. 167.

Her testimony relative thereto is,

"Q. How did you come to receive the patent in fee, if you did receive one? A. Well, I heard that patents were being issued, from people, and, we were requested to go to the office and get our patents. I wasn't here at the time, so that I wrote for mine. I wrote the Indian agent at Browning."

The letter she wrote is as follows:

"4505—18 Avenue N. E.
"Seattle, Washington
"September 16, 1919.
"U. S. Indian Agent of Black Foot Res.
"Browning, Montana
"Dear Sir:

I see by the Great Falls & Kalispell paper that the Indians of the Blackfeet Reservation are receiving the patents to their land. Will you kindly send mine to the above address if you have it.

"Yours very truly,
"Mabel H. Monroe."

■ It is hence not a "forced" fee patent as in United States v. Benewah County, Idaho, 9 Cir., 290 F. 628, 630; cf. United States v. Nez Perce Co., 9 Cir., Idaho, 95 F.2d 232, 233.

It further appears that on October 13, 1920, over eight months after the recording of the fee patent, appellant mortgaged the land to appellee Company to secure her note of that date, and that, in another state case, a foreclosure proceeding, a judgment was rendered foreclosing her right and that, on the sheriff's sale, his deed to the land was given to appellee Company. This deed was dated December 20, 1923. On this evidence the court found "That Plaintiff [appellee company] is now, and ever since the 20th day of December 1923, has been, the owner and entitled to the possession of the lands described in Plaintiff's Complaint."

Appellant has sought the state court's jurisdiction for a contrary decision and had proved her right to invoke that jurisdiction by her testimony and letter seeking the fee patent, and its issuance to her. Having invoked the jurisdiction she—so having the fee in the land—is bound by the court's decision that she had given a mortgage of that fee. Even if erroneously decided, she cannot collaterally attack that decision on the ground she contended in that suit, namely that the mortgage was fraudulently obtained from her; also that it was for a debt prior to the fee patent and hence invalid under Section 354 of 25 U.S.C.A.; also that she was not served and had not appeared in the earlier foreclosure suit, and that the sheriff's notice of sale was defective.

■ Appellant's sole remedy for such error is by appeal and certiorari to the Supreme Court. As said by that Court in an identical case, Larkin v. Paugh, 276 U.S. 431, 439, 440, 48 S.Ct. 366, 368, 72 L.Ed. 640:

"We are of opinion, therefore, that there was nothing in the congressional statutes to prevent the local court from taking and exercising jurisdiction of the administrator's suit for specific performance, brought after the issue of the fee-simple patent. Of course we accept the ruling of the Supreme Court that there was no want of jurisdiction under the state laws.

"As the local court had jurisdiction, that enabled it to decide every question of fact or law arising in the suit, including the questions whether Greyhair's contract to sell to Osborn was valid or invalid in the circumstances in which it was made, and whether by reason of its partial performance while Greyhair was living Osborn became an assignee in such a sense that the contract legally and equitably might be enforced as against the heirs. These questions inhered in the suit, and necessarily were resolved against the heirs by the decree for enforcement. No effort was made to have the decree reviewed or vacated in any direct proceeding. * * * Certain-

ly there was no federal right to have it re-examined or vacated on such an attack."

Nor can appellant in a federal court collaterally attack the state court judgment because there were other grounds for the invalidity of its quieting the title against her, not presented in that case. Northern Pacific Co. v. Slaght, 205 U.S. 122, 27 S.Ct. 442, 51 L.Ed. 738; Fulsom v. Quaker Oil & Gas Co., 8 Cir., 35 F.2d 84, 90.

Appellant was competent to sue in her own right in the Montana state court and is not entitled to have her case tried anew in this federal proceeding.

The judgment is affirmed.